UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZENA ABOU-ZAKI (ARMANI),          )
                                  )
                    Plaintiff,    )        Case No. C12-1688 RSM
                                  )
        v.                        )        ORDER DENYING DEFENDANTS'
                                  )        MOTION FOR SUMMARY
AETNA LIFE INSURANCE COMPANY,     )        JUDGMENT
and BOEHRINGER INGELHEIM, LTD     )
BENEFIT PLAN,                     )
                                  )
                    Defendants.   )
_____ )

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. # 12. Defendants Aetna Life Insurance Co. ("Aetna") and Boehringer Ingelheim, Ltd Benefit Plan ("Boehringer") move for summary judgment on Plaintiff Zena Abou-Zaki's complaint, which seeks the recovery of disability benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. For the reasons set forth below, Defendants' motion for summary judgment is DENIED.

## II.  BACKGROUND

Plaintiff brings this action in relation to an ERISA plan arising from her employment at Boehringer. Title 29 U.S.C. § 1132(e) provides ERISA plan participants with a civil right of

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

action in federal court to recover benefits due under the plan terms.  Plaintiff, a former

pharmaceutical sales representative, was allegedly injured while making a doctor visit in

September 2008.  R. at 000781.  She claims to have "felt something pop" along her right arm,

neck, and shoulder while lifting a laptop and sample bag out of the back of her vehicle.  *Id.*

Plaintiff allegedly could not finish work that day and sought treatment two days later, including

several MRIs and physical therapy.  *Id.*  Although Plaintiff continued to work for several weeks

immediately following the incident, she reported ongoing headaches, dizziness, nausea,

vomiting, numbness, and neck pain.  R. at 000791.  Dr. Ruth Freeman, Plaintiff's primary

physician, later diagnosed her with occipital neuralgia and chronic myofascial strain, which

rendered her unable to return to work.  *See* R. at 000873.  On November 26, 2008, a "Nuclear

Medicine Spec Bone Scan" also revealed potential chronic muscle spasm.  *See* R. at 000847.

As a result, Plaintiff filed for disability benefits under Boehringer's Long Term Disability

Benefit Plan, Policy No. GP-877093 (the "Plan"), which is issued through Aetna.  R. at

000057.

Plan Terms

        The Plan establishes a two-fold test for disability depending on the duration of benefits

paid to the participant after the initial injury.  *See* R. at 000087.  Until benefits are paid for

twenty-four months following the date of disability, a Plan participant is deemed disabled on

any day she is:

- not able to perform the **material duties** of [her] **own occupation** solely because of: disease or **injury**; and
- [her] work earnings are 80% or less of [her] **adjusted predisability earnings.**

R. at 000087 (emphasis in original, indicating defined terms).  Following this 24-month period,

the Plan participant is deemed disabled on any day she is unable to work at any "**reasonable**

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

**occupation"** solely because of:

- disease; or
- **injury**.

R. at 000087 (emphasis in original, indicating defined terms).  After initial approval, disability benefits will end on the first to occur of:

- The date Aetna finds [the participant is] no longer disabled or the date [she] fails to furnish proof that [she is] disabled.
- The date Aetna finds that [the participant has] withheld information which indicates [she is] performing, or [is] capable of performing the duties of a **reasonable occupation**.
- The date an independent medical exam report or functional capacity evaluation fails to confirm [the participant's] disability.
- The date [the participant's] condition would permit [her] to work, or increase the number of hours [she] work[s], or the number or type of duties [she] perform[s] in [her] **own occupation**, but [she] refuse[s] to do so.

R. at 000088 (emphasis in original, indicating defined terms).

Within the guidelines detailed above, the Plan also provides that Aetna shall have discretionary authority to

- determine whether and to what extent employees and beneficiaries are entitled to benefits; and
- construe any disputed or doubtful terms of this policy.

R. at 000083.

Medical Evaluations and Termination of Benefits

Pursuant to this test, Plaintiff suggested that her inability to lift items over five pounds or drive for long periods of time precluded her from performing her own occupation.  R. at 000128.  After initially receiving short term disability benefits, Plaintiff was approved for long term disability benefits effective April 10, 2009.  *See* R. at 000163.  Plaintiff was also awarded workers compensation benefits from the Washington State Department of Labor and Industries

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

("L&I") effective April 26, 2009, and Social Security Disability ("SSD") effective April 1, 2010. R. at 000212, 000280.

As early as 2010, various medical professionals indicated that Plaintiff was capable of returning to work. On June 29, 2010, L&I conducted an independent medical examination ("IME") in which Drs. Karl Goler, neurosurgeon, and St. Elmo Newton, an orthopedic hand surgeon, indicated that Plaintiff was "able to return to work without restrictions." R. at 000789. An additional IME on November 10, 2010 diagnosed Plaintiff with a "Cervical sprain." R. at 000791. The reviewing physicians noted pain behavior, but also indicated a lack of objective findings of significant abnormalities. *See id.* In particular, MRIs and CTs of the cervical spine failed to show "any significant pathology," and two EMGs of the upper extremities were normal. *Id.* The panel ultimately agreed that Plaintiff was capable of full-time, unrestricted work, but recommended a psychological examination. *See* R. at 000792. Two days later, Dr. Michael Friedman conducted a Psychiatric IME in which he found no psychological reason to restrict employment. R. at 000802. L&I subsequently released Plaintiff to work and terminated time-loss benefits on February 9, 2011. R. at 001507.

In contrast to the conclusions reached by the doctors who performed the IMEs, Plaintiff's physician consistently concluded that Plaintiff was unable to work. *See, e.g.,* R. at 000813 (deeming Plaintiff unable to work on April 14, 2010 due to her inability to sit for long periods or do fine motor work); R. at 000816 (confirming Plaintiff's inability to work on June 10, 2010); R. at 000818 (indicating that Plaintiff's chronic neck pain precluded her from working). Dr. Freeman noted complaints of chronic pain, tenderness, and a limited range of motion. R. at 000813, 0001385. She also observed "mild visible neck asymmetry," crepitus, "mild atrophy of the thenar muscles," swelling, and a change of posture. R. at 000821, 001385.

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

Dr. Freeman recognized that her diagnoses of (1) cervicogenic headache, (2) occipital neuralgia, (3) cervical facet syndrome, and (4) myofascitis (muscular dysfunction of the neck) would not result in a positive EMG or CT.  R. at 000765.  However, she claimed that an x-ray of the cervical spine provided objective evidence of a "reversal of cervical lordosis."  *Id.*  Dr. Freeman treated these conditions through physical therapy, facet injections, and medical therapy, though none were successful.  *Id.*

Beginning April 10, 2011, the Plan required Plaintiff to satisfy a more stringent definition of disability to remain eligible for benefits.  R. at 000163.  Because Plaintiff had received benefits for twenty-four months at this time, she was now subject to the second prong of the disability test, which required proof of inability to perform *any reasonable occupation*. *Id.* (emphasis added). Citing a lack of objective evidence to support such a finding, on May 26, 2011, Aetna provisionally continued monthly benefits and requested information from Plaintiff to supplement her subjective complaints.  R. at 000271.  Aetna also requested medical evidence from Dr. Freeman on three occasions, as her views conflicted with those of the IME examiners. *See* R. at 000245, 000770.  In addition to reviewing physician files, Aetna conducted five days of video surveillance in July and September 2011.  The video surveillance showed Plaintiff exercising for over an hour, on consecutive days, where such exercise included speed walking and brief jogging.  *See, e.g.,* R. at 001732 (3:37); (18:34); (30:00).  The footage also showed Plaintiff picking up a suitcase, carrying bags and small furniture, and socializing for nearly six hours at a shopping center and restaurant.  *See* R. at 001733 (40:39); (42:55); 001734 (5:33). Although medical professionals had recommended a short walking routine as part of Plaintiff's rehabilitation, Plaintiff had previously claimed that her disability prevented her from carrying items over five pounds or moving for long periods of time.  R. at 000838.

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

At this time, medical reports continued to conflict with Dr. Freeman's opinion that Plaintiff was permanently disabled.  Dr. Freeman continued to insist that Plaintiff was unable to "hold gainful employment."  R. at 001385 (assessing Plaintiff's ability to return to work on May 18, 2011); 001079 (concluding on September 17, 2011 that Plaintiff was unable to work).  On September 19, 2011, Daniel Brzusek, Doctor of Osteopathy, came to a different conclusion after examining Plaintiff and reviewing her medical history.  *See* R. at 001054.  He initially expressed doubt as to Plaintiff's ability to return to work without restrictions, although he noted the lack of objective evidence and disagreed that Plaintiff was permanently disabled.  R. at 001069.  However, Dr. Brzusek later reversed his opinion after viewing the surveillance video, citing inexplicable discrepancies between Plaintiff's actions on the video and her statements about her medical history.  *See* R. at 001070.  Ultimately, Dr. Brzusek concluded that Plaintiff was capable of full-time light duty work.  *Id.*

As a result, Aetna concluded that Plaintiff no longer met the Plan's definition of "disability" and terminated her benefits effective October 17, 2011.  R. at 000874.  Aetna indicated that its decision was based on (1) medical records from Dr. Freeman, (2) IME reports, (3) a June 13, 2011 Peer to Peer review in which a consultant found Dr. Freeman's opinion to be "based on her personal self experience," and (4) the surveillance video.  *Id.*

Plaintiff appealed the termination of benefits on April 3, 2012, supplementing the file with physician reports detailing complaints of pain and limited mobility.  *See* R. at 000564, 000691.  Additions to the file included a report from Dr. Molly Fuentes, who examined Plaintiff and reviewed her medical history.  *See* R. at 000684.  Although Dr. Fuentes did not expressly determine whether Plaintiff was capable of returning to work, she indicated that Plaintiff should be limited to two hours of sitting at one time and two hours of standing or

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

walking as a result of her cervical spine dysfunction.  R. at 000688.  Plaintiff also submitted a

Performance-Based Physical Capacities Evaluation in which Theodore Becker, Ph.D.,

identified muscle spasms.  R. at 000599.  Dr. Becker ultimately recommended sedentary tasks

and indicated a lack of "sustainable, competitive, and predictable work" suitable for Plaintiff.

R. at 000560.  Notably, Dr. Becker cast doubt on Aetna's conclusions regarding the video

surveillance. R. at 000635 (identifying "biomechanical cervical dysfunction" in images from

the video).  Finally, Plaintiff submitted lay witness statements and an additional review by Dr.

Carolyn Marquardt, who recommended disability through both Aetna and SSD.  *See* R. at

000694; 001034-37.

Through its appeals process, Aetna conducted an additional file review and

psychological assessment, both of which failed to identify any impairment precluding full time

work.  *See* R. at 000727, 000733, 000755.  Aetna upheld the termination of benefits on

September 6, 2012.  R. at 000302. Plaintiff then filed this action on October 1, 2012. In her

complaint, she asserts claims for wrongful denial of benefits under the Plan and breach of

fiduciary duty. Dkt. # 1, ¶¶ 3.1-3.2. Defendants moved for summary judgment. They contend

that "there is no evidence that the Plaintiff was disabled from performing any reasonable

occupation, and, therefore, her claims against Defendants must be denied." Dkt. # 12, p. 2.

## III.  DISCUSSION

A.    Standard of Review

Courts review an ERISA plan's denial of benefits under two standards:  *de novo* review

and abuse of discretion.  The plan's language is the starting point to determine the applicable

standard of review.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962-63 (9th Cir.

2006).  *De novo* review applies to a plan's denial of benefits "unless the benefit plan gives the

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In contrast, ERISA dictates a deferential standard of review when "the trustee exercises discretionary powers." *Id.* at 111.

For the more lenient abuse of discretion standard to apply, the plan's terms must "unambiguously grant discretion to the administrator." *Abatie*, 458 F.3d at 963.  The plan administrator has the burden of proving that the plan grants discretion, and any ambiguity is construed in favor of the participant.  *See Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991, 994 (9th Cir. 2000).  In the Ninth Circuit, a plan grants discretion where its terms clearly provide the administrator with power to interpret terms and make final benefits determinations. *Abatie*, 458 F.3d at 964.  While there are no "magic words" that confer discretion, the Ninth Circuit has recognized discretion where the text gives the administrator power to "resolve ambiguities, inconsistencies and omissions," or provides the "full, final, exclusive and binding power" to make claims determinations.  *Id.* at 963-64.  Conversely, no discretionary authority exists where a plan merely "identifie[s] the plan administrator's tasks," but does not bestow power to interpret the plan.  *Id.* at 964.

Here, the parties have agreed that the *de novo* standard of review should be applied in this case. Dkt. # 15, p. 10.  However, the Plan expressly gives Aetna discretion to make benefits determinations and construe disputed terms.  *See* R. at 000083 (indicating that Aetna "shall have discretionary authority to: determine whether and to what extent employees . . . are entitled to benefits; and construe any disputed or doubtful terms of this policy").  Despite the Ninth Circuit's high evidentiary standard for a finding of discretion, such a clear allocation of discretion is undoubtedly the "unambiguous grant" intended to confer a more deferential

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

standard of review.  As a result, abuse of discretion is the legally accurate standard of review

that reflects the parties' contractual language.  As a general rule, courts are not bound to accept

incorrect stipulations to questions of law.  *Sanford's Estate v. Comm'r of Internal Revenue*, 308

U.S. 39, 51 (1939).  However, nor are courts required to ignore an incorrect stipulation to *de*

*novo* review.  *Rorabaugh v. Cont'l Cas. Co.*, 321 Fed. Appx. 708, 709 (9th Cir. 2009).  In fact,

parties stipulating to *de novo* review lose the right to appeal an incorrect stipulation.  *Id.* at 709.

The Court shall honor the parties' agreement to apply the *de novo* standard.

B.     Summary Judgment Standard

The Ninth Circuit has held that the traditional standards for summary judgment apply in

ERISA cases that (1) are reviewed under the *de novo* standard, or (2) involve a conflict of

interest that requires the court to consider evidence outside the administrative record (as these

claims trigger *de novo* review).  *Stephan v. Unam Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th

Cir. 2012); *see Thomas*, 228 F.3d at 995.  In such cases, summary judgment may only be

granted if, when viewing the evidence "in the light most favorable to the non-moving party,"

the moving party shows that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th

Cir. 2009); Fed. R. Civ. P. 56(a).  Because the moving party need only show the absence of a

genuine issue of material fact, the non-moving party can only avoid summary judgment by

making "a sufficient showing on [each] essential element of her case with respect to which she

has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

C.     Analysis

Under *de novo* review, Plaintiff has the burden of proving that she was entitled to a

continuation of benefits under the terms of the plan at the time benefits were denied.  *Muniz v.*

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

*Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010).  Although it is typically sufficient to limit review to the administrative record, the Court has discretion to allow additional evidence when "necessary to conduct an adequate *de novo* review of the benefits decision."  *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).

Defendants contend that the administrative record contains "no evidence that the Plaintiff was totally and permanently disabled." Dkt. # 12, p. 14. However, as conceded by Defendants and discussed by Plaintiff, the record contains several reports authored by Plaintiff's health care providers that support Plaintiff's claim for Plan eligibility.  *See, e.g.*, R. at 000688 (Dr. Fuentes indicated that Plaintiff should be limited to two hours of sitting at one time, and two hours of standing, or walking); R. at 000599 (Dr. Becker's Performance-Based Physical Capacities Evaluation identifying muscle spasms); R. at 000560 (Dr. Becker ultimately recommended sedentary tasks and indicated a lack of "sustainable, competitive, and predictable work" suitable for Plaintiff).

Benefit eligibility determinations often require the fact finder to weigh the persuasiveness of conflicting medical information and testimony, which is inappropriate on a motion for summary judgment.  *See Kearney*, 175 F.3d at 1095. "In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id.* Defendants argue that because the provider reports that support Plaintiff's eligibility for benefits rely upon subjective evidence of Plaintiff's condition, such reports do not constitute evidence of Plaintiff's eligibility. But even assuming that the reports are based on subjective evidence, Defendants provide no authority to support

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

the argument that such reports are not evidence. Here, as discussed above, the administrative record is replete with contradictory assessments by health professionals concerning whether Plaintiff was disabled under the terms of the Plan. "On summary judgment, the proper task is not to weigh conflicting evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor." *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1114 (9th Cir. 2001). Because the record evidence includes opinions from Plaintiff's health care providers that she cannot perform any reasonable occupation, a reasonable juror could conclude that the evidence supports Plaintiff's position. Thus, summary judgment—even where the trial court will consider the same evidence in a trial proceeding—is inappropriate. *Id.*; *see also id.* at 1105 ("the district court should have conducted a trial proceeding in which the trial record consisted of the information which was before the administrator") (Fernandez, J. dissenting). The Court will properly weigh the evidence to determine whether Plaintiff was disabled under the policy at a trial proceeding on the merits. Accordingly, Defendants' motion for summary judgment is DENIED.

## IV.  CONCLUSION

Having reviewed the motion, the response and reply thereto, the attached declarations and exhibits, the administrative record, and the balance of the file, the Court hereby finds and ORDERS Defendants' Motion for Summary Judgment (Dkt. # 12) is DENIED.

Dated this 1st day of November 2013.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11