UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZENA ABOU-ZAKI (ARMANI), )
 )
                     Plaintiff, )
 ) Case No. C12-1688 RSM
      v. )
 ) **FINDINGS OF FACT AND**
AETNA LIFE INSURANCE COMPANY, ) **CONCLUSIONS OF LAW**
and BOEHRINGER INGELHEIM, LTD )
BENEFIT PLAN, )
 )
                     Defendants. )
 )

This is an action for long-term disability benefits under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* brought by Plaintiff Zena Abou-Zaki against Defendants Aetna Life Insurance Co. ("Aetna") and Boehringer Ingelheim, Ltd Benefit Plan ("Boehringer"). The Court held a bench trial on the administrative record on December 9, 2013. Having reviewed *de novo* the administrative record, and having considered the pleadings and arguments by counsel, the Court finds in favor of Defendants.

## I. FINDINGS OF FACT

"In bench trials, Fed. R. Civ. P. 52(a) requires a court to 'find the facts specifically and state separately its conclusions of law thereon.'" *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (quoting Fed. R. Civ. P. 52(a)). By identifying the factual basis

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

for its ultimate conclusions, the trial court satisfies an important purpose of Rule 52: "to aid the appellate court's understanding of the basis of the trial court's decision." *Id.* (citation omitted). The trial court, however, "is not required to base its findings on each and every fact presented at trial." *Id.* at 792. The Court's findings of fact on the Administrative Record (cited throughout as "R.") are as follows.

**A.     Aetna's Long-Term Disability Plan**

Ms. Abou-Zaki formerly worked as a pharmaceutical sales representative for Boehringer. She was injured while making a doctor visit in September 2008. R. at 000781. She claims to have "felt something pop" along her right arm, neck, and shoulder while lifting a laptop and sample bag out of the back of her vehicle. *Id.* Ms. Abou-Zaki could not finish work that day and sought treatment two days later, which included several MRIs and physical therapy. *Id.* Although Plaintiff continued to work for several weeks immediately following the incident, she reported ongoing headaches, dizziness, nausea, vomiting, numbness, and neck pain. R. at 000791. Dr. Ruth Freeman, Plaintiff's primary physician, later diagnosed her with occipital neuralgia and chronic myofascial strain, which rendered her unable to return to work. *See* R. at 000873. On November 26, 2008, a "Nuclear Medicine Spec Bone Scan" also revealed potential chronic muscle spasm. *See* R. at 000847. As a result, Plaintiff filed for disability benefits under Boehringer's Long Term Disability Benefit Plan, Policy No. GP-877093 (the "Plan"), which was issued through Aetna. R. at 000057.

The Plan establishes a two-fold test for disability depending on the duration of benefits paid to the participant after the initial injury. *See* R. at 000087. Until benefits are paid for twenty-four months following the date of disability, a Plan participant is deemed disabled on any day she is:

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

- not able to perform the **material duties** of [her] **own occupation** solely because of: disease or **injury**; and
- [her] work earnings are 80% or less of [her] **adjusted predisability earnings.**

R. at 000087 (emphasis in original, indicating defined terms). Following this 24-month period, the Plan participant is deemed disabled on any day she is unable to work at any "**reasonable occupation**" solely because of:

- disease; or
- **injury**.

R. at 000087 (emphasis in original, indicating defined terms). After initial approval, disability benefits will end on the first to occur of:

- The date Aetna finds [the participant is] no longer disabled or the date [she] fails to furnish proof that [she is] disabled.
- The date Aetna finds that [the participant has] withheld information which indicates [she is] performing, or [is] capable of performing the duties of a **reasonable occupation**.
- The date an independent medical exam report or functional capacity evaluation fails to confirm [the participant's] disability.
- The date [the participant's] condition would permit [her] to work, or increase the number of hours [she] work[s], or the number or type of duties [she] perform[s] in [her] **own occupation**, but [she] refuse[s] to do so.

R. at 000088 (emphasis in original, indicating defined terms).

Within the guidelines detailed above, the Plan also provides that Aetna shall have discretionary authority to

- determine whether and to what extent employees and beneficiaries are entitled to benefits; and
- construe any disputed or doubtful terms of this policy.

R. at 000083.

**B.     Plaintiff's Medical Evaluations and Termination of Benefits**

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

Plaintiff told her employer that her inability to lift items over five pounds or drive for long periods of time precluded her from performing her own occupation. R. at 000128. After initially receiving short term disability benefits, Plaintiff was approved for long term disability benefits effective April 10, 2009. *See* R. at 000163. Plaintiff was also awarded workers compensation benefits from the Washington State Department of Labor and Industries ("DLI") effective April 26, 2009, and Social Security Disability ("SSD") effective April 1, 2010. R. at 000212, 000280.

As early as 2010, various medical professionals indicated that Plaintiff was capable of returning to work. On June 29, 2010, DLI requested an independent medical examination ("IME") of Plaintiff. After performing the IME, Drs. Karl Goler, a neurosurgeon, and St. Elmo Newton, III, an orthopedic hand surgeon, indicated that Plaintiff was "able to return to work without restrictions." R. at 000789. An additional IME was conducted on November 10, 2010. Plaintiff was diagnosed with a "Cervical sprain." R. at 000791. The reviewing physicians noted pain behavior, but also indicated a lack of objective findings of significant abnormalities. *See id.* In particular, MRIs and CTs of the cervical spine failed to show "any significant pathology," and two EMGs of the upper extremities were normal. *Id.* The panel ultimately agreed that Plaintiff was capable of full-time, unrestricted work, but recommended a psychological examination. *See* R. at 000792. Two days later, Dr. Michael Friedman conducted a Psychiatric IME in which he found no psychological reason to restrict employment. R. at 000802. DLI subsequently released Plaintiff to work and terminated time-loss benefits on February 9, 2011. R. at 001507.

In contrast to the conclusions reached by the doctors who performed the IMEs, Plaintiff's physician consistently concluded that Plaintiff was unable to work. *See, e.g.,* R. at

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

000813 (deeming Plaintiff unable to work on April 14, 2010 due to her inability to sit for long periods or do fine motor work); R. at 000816 (confirming Plaintiff's inability to work on June 10, 2010); R. at 000818 (indicating that Plaintiff's chronic neck pain precluded her from working). Dr. Freeman noted complaints of chronic pain, tenderness, and a limited range of motion. R. at 000813, 0001385. She also observed "mild visible neck asymmetry," crepitus, "mild atrophy of the thenar muscles," swelling, and a change of posture. R. at 000821, 001385. Dr. Freeman recognized that her diagnoses of (1) cervicogenic headache, (2) occipital neuralgia, (3) cervical facet syndrome, and (4) myofascitis (muscular dysfunction of the neck) would not result in a positive EMG or CT. R. at 000765. However, she claimed that an x-ray of the cervical spine provided objective evidence of a "reversal of cervical lordosis." *Id.* Dr. Freeman treated these conditions through physical therapy, facet injections, and medical therapy, though none were successful. *Id.*

Beginning April 10, 2011, the Plan required Plaintiff to satisfy a more stringent definition of disability to remain eligible for benefits. R. at 000163. Because Plaintiff had received benefits for twenty-four months at this time, she was now subject to the second prong of the disability test, which required proof of inability to perform *any reasonable occupation*. *Id.* (emphasis added). Citing a lack of objective evidence to support such a finding, on May 26, 2011, Aetna provisionally continued monthly benefits and requested information from Plaintiff to supplement her subjective complaints. R. at 000271. Aetna also requested medical evidence from Dr. Freeman on three occasions, as her views conflicted with those of the IME examiners. *See* R. at 000245, 000770. In addition to reviewing physician files, Aetna conducted five days of video surveillance in July and September 2011. The video surveillance showed Plaintiff exercising for over an hour, on consecutive days, where such exercise included speed walking

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

and brief jogging. *See, e.g.,* R. at 001732 (3:37); (18:34); (30:00). The footage also showed Plaintiff picking up a suitcase, carrying bags and small furniture, and socializing for nearly six hours at a shopping center and restaurant. *See* R. at 001733 (40:39); (42:55); 001734 (5:33). Although medical professionals had recommended a short walking routine as part of Plaintiff's rehabilitation, Plaintiff had previously claimed that her disability prevented her from carrying items over five pounds or moving for long periods of time. R. at 000838.

At this time, medical reports continued to conflict with Dr. Freeman's opinion that Plaintiff was permanently disabled. Dr. Freeman continued to insist that Plaintiff was unable to "hold gainful employment." R. at 001385 (assessing Plaintiff's ability to return to work on May 18, 2011); 001079 (concluding on September 17, 2011 that Plaintiff was unable to work). However, on July 7, 2011, Dr. VanderPutten conducted a Peer-to-Peer review of Plaintiff's case. R. at 000770-771. After contacting Dr. Freeman to obtain clarification about why her opinions conflicted with the opinions of the IME examiners, Dr. VanderPutten concluded that Dr. Freeman's opinion was not based on any objective medical evidence. *See id.* at 000770. Similarly, on July 14, 2011, Dr. Swotinsky conducted a physician's review of Plaintiff's file. R. 001080 – 1085. After reviewing Dr. Freeman's opinions and considering Plaintiff's clinical file, Dr. Swotinsky concluded that "Dr. Freeman's opinion is not evidence-based. Her support of the claimant's disability for nonverifiable and non-disabling conditions may be contrary to the claimant's interests. For these (if not other) reasons, Dr. Freeman's opinion that the claimant is permanently and completely disabled is inappropriate." R. at 001084.

In addition, on September 19, 2011, Daniel Brzusek, physiatrist, came to a different conclusion than Dr. Freeman after examining Plaintiff and reviewing her medical history. *See* R. at 001054. He initially expressed doubt as to Plaintiff's ability to return to work without

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

restrictions, although he noted the lack of objective evidence and disagreed that Plaintiff was permanently disabled. R. at 001069. However, Dr. Brzusek later reversed his opinion after viewing the surveillance video, citing inexplicable discrepancies between Plaintiff's actions on the video and her statements about her medical history. *See* R. at 001070. Ultimately, Dr. Brzusek concluded that Plaintiff was capable of full-time light duty work. *Id.*

As a result, Aetna concluded that Plaintiff no longer met the Plan's definition of "disability" and terminated her benefits effective October 17, 2011. R. at 000874. Aetna indicated that its decision was based on (1) the medical records from Dr. Freeman, (2) the IME reports, (3) the Peer to Peer review with a call to Dr. Freeman, and (4) the surveillance video and associated reports. *Id.*

Plaintiff appealed the termination of benefits on April 3, 2012, supplementing the file with physician reports detailing complaints of pain and limited mobility. *See* R. at 000564, 000691. Additions to the file included a report from Dr. Molly Fuentes, who examined Plaintiff and reviewed her medical history. *See* R. at 000684. Dr. Fuentes did not determine whether Plaintiff was capable of returning to work. Instead, she indicated that Plaintiff should be limited to two hours of sitting at one time and two hours of standing or walking as a result of her cervical spine dysfunction. R. at 000688. Dr. Fuentes concluded that Plaintiff should be limited to 6-8 hours of sitting per work day. *Id.*

Plaintiff also submitted a Performance-Based Physical Capacities Evaluation in which Theodore Becker, Ph.D., identified muscle spasms. R. at 000599. Dr. Becker ultimately recommended sedentary tasks and indicated a lack of "sustainable, competitive, and predictable work" suitable for Plaintiff. R. at 000560. Dr. Becker cast doubt on Aetna's conclusions regarding the video surveillance. R. at 000635 (identifying "biomechanical cervical

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7

dysfunction" in images from the video). Finally, Plaintiff submitted lay witness statements and an additional review by Dr. Carolyn Marquardt, who recommended disability through both Aetna and SSD. *See* R. at 000694; 001034-37.

Through its appeals process, Aetna conducted an additional file review and psychological assessment, both of which failed to identify any impairment precluding full time work. *See* R. at 000727, 000733, 000755. Aetna upheld the termination of benefits on September 6, 2012. R. at 000302. Plaintiff then filed this action on October 1, 2012. In her complaint, she asserted claims for wrongful denial of benefits under the Plan and breach of fiduciary duty. Dkt. # 1, ¶¶ 3.1-3.2.

## II. STANDARD OF REVIEW AND BURDEN OF PROOF

The parties have agreed that the *de novo* standard of review applies in this matter. A court conducting *de novo* review of an administrative decision evaluates the administrative record before it without giving deference to the parties' contentions. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989). Nor does the court give deference to the administrator's decision to deny a plaintiff benefits under the terms of the plan. *See Ermovick v. Mitchell, Silberberg & Knupp LLP Long Term Disability Coverage for All Employees*, Case No. C05-06018-JHN-VBKx, 2010 WL 3956819, at * 8 (C.D. Cal. Oct. 8, 2010). The trial court's review of the record "can best be understood as essentially a bench trial 'on the papers' . . . ." *Porco v. Prudential Ins. Co. of America,* 682 F. Supp. 2d 1057, 1071 (C.D. Cal. 2010) (quoting *Muller v. First Unum Life Ins. Co.,* 341 F.3d 119, 124 (2d Cir. 2003)). "In a trial on the record . . . the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Porco*, 682 F. Supp. 2d at 1095.

Under *de novo* review, Plaintiff has the burden of proving that she was entitled to a

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

continuation of benefits under the terms of the plan at the time benefits were denied. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010). Although it is typically sufficient to limit review to the administrative record, the trial court has discretion to allow additional evidence when "necessary to conduct an adequate *de novo* review of the benefits decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)). Here, Plaintiff did not seek admission of any additional evidence. Thus, the Court considered only the pleadings, the Administrative Record, and the arguments presented by counsel to reach the following conclusions of law.

### III. CONCLUSIONS OF LAW

**A.  Whether Plaintiff was Totally Disabled**

After conducting a *de novo* review, the Court concludes that Ms. Abou-Zaki was not totally disabled under the Plan. First, multiple IMEs and health care providers' reports fail to demonstrate that Ms. Abou-Zaki's condition renders her totally disabled such that she is incapable of performing any reasonable occupation. For example, at the behest of DLI, after conducting an IME on November 10, 2010, Drs. Goler and St. Elmo Newton, III determined that there was no physical or radiological reason why Plaintiff could not return to full-time work, without restrictions. R. at 000792. In addition, on November 12, 2010, Dr. Friedman concluded that the psychological IME that he conducted failed to show a reason for restricting Plaintiff's employment. R. at 000802. From these negative IME's, DLI concluded that Plaintiff was able to return to work. R. 001507.

Aetna then requested further evidence from Plaintiff's treating physician regarding the nature of Plaintiff's condition. *See* R. at 000245. Although Dr. Freeman told Aetna on May 18,

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9

2011 that Plaintiff's condition was completely disabling (*see* R. at 001385-1386), when Dr. Fuentes evaluated Plaintiff on June 11, 2011, she concluded that Plaintiff's condition warranted some restriction on the length of time spent standing and walking without interruption, or sitting without interruption, but that Plaintiff could sit for a total of 6-8 hours per day. R. at 000688. Dr. Fuentes did not conclude that Plaintiff's condition rendered her totally disabled.

On July 7, 2011, Dr. VanderPutten conducted a physician's review of Plaintiff's file and determined that Plaintiff was capable of returning to work. R. 000770-771. Similarly, on July 14, 2011, Dr. Swotinsky conducted a physician's review of Plaintiff's file and determined that her neck condition was not disabling to the extent that it would preclude her from working. R. at 001082. Finally, on September 19, 2011, Dr. Brzusek conducted another IME. He ultimately concluded that Plaintiff should be able to perform a light duty, full time position. R. at 001070.

Second, although Dr. Freeman and Dr. Becker state that Plaintiff cannot work, their reports do not establish, nor do they sufficiently address whether Plaintiff is totally disabled under the terms of the Plan. In the Ninth Circuit, that "a person has a true medical diagnosis . . . does not by itself establish disability." *Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds by Abatie v. Alta Health Life Ins. Co*., 458 F.3d 955, 969 (9th Cir. 2006). Although Plaintiff may suffer from tenderness and pain in the neck and shoulder, or from headaches, the medical reports fail to show why such conditions would prevent Plaintiff from performing any reasonable occupation. Dr. Freeman opines that Plaintiff (1) has a condition that would not result in a position EMG study or CT scan, and (2) has not responded to any treatment. *See* R. at 000765-766. She then summarily concludes that Plaintiff "is permanently disabled for Employment." *Id.* at 766. Dr. Freeman's opinions are at odds with the opinions expressed by numerous other physicians that

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 10

either personally evaluated Plaintiff or reviewed her medical files.

In addition, although Dr. Becker stated that "there is no recommendation for sustainable, competitive, and predictable work . . ." due to "fatigue dysfunction" in Plaintiff's shoulder area, Dr. Becker does not explain whether fatigue dysfunction is a condition that renders a person totally disabled. *See id.* at 000560. Moreover, under Section 6 of Dr. Becker's report, entitled Conclusions, Dr. Becker stated that "[i]t is the opinion of the examiner that the examinee does not have the ability to biomechanically undertake functions for body postures/positions that have been associated with previous work applications." *Id.* at 000600. Notably, Section 6 does not address whether Plaintiff could perform other work with accommodation or restrictions.

Third, the video surveillance footage appears to contradict the medical opinions concerning Plaintiff's perceived functional limitations. The videos show Plaintiff walking and jogging for lengthy periods of time, and they show Plaintiff carrying a suitcase from the front her home and loading it into the back of a car. Plaintiff does not appear to be in distress or to struggle while engaging in these activities. *See* R. at 001732-1734. Aetna requested that Plaintiff be placed under surveillance to help shed light on the discrepancies between Plaintiff's primary physician's opinions and those expressed by the independent medical providers. Instead of providing Aetna with clear medical evidence of total functional impairment, Plaintiff provided evidence that she experiences shoulder or neck dysfunction and pain. That evidence does not demonstrate that Plaintiff is precluded from performing any reasonable occupation.

Under the terms of the Plan, Aetna was within its rights to terminate long-term disability benefits on any date that (1) Plaintiff fails to furnish proof that she is disabled, (2) Aetna found that Plaintiff withheld information indicating that she was performing, or was

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

capable of performing the duties of a reasonable occupation, or (3) an IME report or functional capacity evaluation failed to confirm her disability. Here, multiple IME's, file reviews, and physician reports failed to confirm that Plaintiff's disability rendered her totally disabled, and the surveillance footage appears to contradict Plaintiff's assertions and Dr. Freeman's assessment that Plaintiff could not walk for long periods of time or lift objects over five pounds. Given the entirety of the record, Plaintiff has not met her burden to demonstrate that she was totally disabled under the terms of the Plan. Accordingly, judgment shall be entered in favor of Defendants.

## IV. CONCLUSION

Having reviewed the motion, the response and reply thereto, the attached declarations and exhibits, the administrative record, and the balance of the file, the Court hereby finds and ORDERS judgment be entered in favor of Defendants.

Dated this 2nd day of January 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12